UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Philip A. Brimmer
Magistrate Judge Kathleen M. Tafoya

Civil Action No. 11-cv-02887-PAB-KMT

U.S. COMMODITY FUTURES TRADING COMMISSION,

    Plaintiff,

v.

NICHOLAS TRIMBLE,
CAPSTONE FX QUANTITATIVE ANALYSIS, INC. and
BEEKEEPERS FUND CAPITAL MANAGEMENT, LLC,

    Defendants.

---

**CONSENT ORDER FOR PERMANENT INJUNCTION, RESTITUTION, CIVIL MONETARY PENALTY, AND OTHER EQUITABLE RELIEF AGAINST DEFENDANT NICHOLAS TRIMBLE**

---

## I. INTRODUCTION

On November 7, 2011, Plaintiff U.S. Commodity Futures Trading Commission ("Commission" or "CFTC") filed a Complaint against Defendants Nicholas Trimble ("Trimble"), Capstone FX Quantitative Analysis, Inc. ("Capstone") and Beekeepers Fund Capital Management, LLC ("BKFCM") (collectively, "Defendants"), seeking injunctive and other equitable relief, as well as the imposition of civil penalties, for violations of the Commodity Exchange Act ("Act"), as amended by the Food, Conservation, and Energy Act of 2008, Pub. L. No. 110-246, Title XIII (the CFTC Reauthorization Act of 2008 ("CRA")), §§ 13101-13204, 122 Stat. 1651 (enacted June 18, 2008), and the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010 ("Dodd-Frank Act"), Pub. L. No. 111-203, Title

1

VII (the Wall Street Transparency and Accountability Act of 2010), §§ 701-774, 124 Stat. 1376 (enacted July 16, 2010), to be codified at 7 U.S.C. §§ 1 *et seq.*, and the Commission's Regulations ("Regulations") promulgated thereunder, 17 C.F.R. § 1.1 *et seq.* (2011). The Court entered an *ex parte* statutory restraining order against Defendants on November 8, 2011 and an order for Preliminary Injunction ("PI Order") on September 24, 2012.

## II. CONSENTS AND AGREEMENTS

To effect settlement of all charges alleged in the Complaint against Defendant Trimble without a trial on the merits or any further judicial proceedings, Defendant Trimble:

1. Consents to the entry of this Consent Order for Permanent Injunction, Restitution, Civil Monetary Penalty, and Other Equitable Relief Against Defendant Trimble ("Consent Order");

2. Affirms that he has read and agreed to this Consent Order voluntarily, and that no promise, other than as specifically contained herein, or threat, has been made by the Commission or any member, officer, agent or representative thereof, or by any other person, to induce consent to this Consent Order;

3. Acknowledges service of the summons and Complaint;

4. Admits the jurisdiction of this Court over him and the subject matter of this action pursuant to Section 6c of the Act, as amended, 7 U.S.C. § 13a-1;

5. Admits the jurisdiction of the Commission over the conduct and transactions at issue in this action pursuant to the Act, as amended, 7 U.S.C. §§ 1, *et seq.*;

6. Admits that venue properly lies with this Court pursuant to Section 6c(e) of the Act, as amended, 7 U.S.C. § 13a-1(e);

7. Waives:

   a. any and all claims that he may possess under the Equal Access to Justice Act, 5 U.S.C. § 504 (2006) and 28 U.S.C. § 2412 (2006), and/or the rules promulgated by the Commission in conformity therewith, Part 148 of the Regulations, 17 C.F.R. §§ 148.1 *et seq.* (2012), relating to, or arising from, this action;

   b. any and all claims that he may possess under the Small Business Regulatory Enforcement Fairness Act of 1996, Pub. L. No. 104-121, §§ 201-253, 110 Stat. 847, 857-868 (1996), as amended by Pub. L. No. 110-28, § 8302, 121 Stat. 112, 204-205 (2007), relating to, or arising from, this action;

   c. any claim of Double Jeopardy based upon the institution of this action or the entry in this action of any order imposing a civil monetary penalty or any other relief, including this Consent Order; and

   d. any and all rights of appeal from this action.

8. Consents to the continued jurisdiction of this Court over him for the purpose of implementing and enforcing the terms and conditions of this Consent Order and for any other purpose relevant to this action, even if Trimble now or in the future resides outside the jurisdiction of this Court.

9. Agrees that he will not oppose enforcement of this Consent Order by alleging that it fails to comply with Rule 65(d) of the Federal Rules of Civil Procedure and waives any objection based thereon.

10. Agrees that neither he nor any of his agents or employees under his authority or control shall take any action or make any public statement denying, directly or indirectly, any allegation in the Complaint or the Findings of Fact and Conclusions of Law in this Consent Order, or creating or tending to create the impression that the Complaint and/or this Consent Order is without a factual basis; provided, however, that nothing in this provision shall affect his: (a) testimonial obligations; or (b) right to take legal positions in other proceedings to which the Commission is not a party. Trimble shall undertake all steps necessary to ensure that all of his agents and/or employees under his authority or control understand and comply with this agreement.

11. By consenting to the entry of this Consent Order, Trimble neither admits nor denies the allegations of the Complaint or the Conclusions of Law in this Consent Order, except as to jurisdiction and venue, which Trimble admits. Further, Trimble agrees and intends that the allegations contained in the Complaint and all of the Findings of Fact and Conclusions of Law contained in this Consent Order shall be taken as true and correct and be given preclusive effect, without further proof, in the course of: (a) any current or subsequent bankruptcy proceeding filed by, on behalf of, or against Trimble; (b) any proceeding pursuant to Section 8a of the Act, 7 U.S.C. § 12a, and/or Part 3 of the Regulations, 17 C.F.R. §§ 3.1 *et seq.* (2012); and/or (c) any proceeding to enforce the terms of this Consent Order.

12. Agrees to provide immediate notice to this Court and the Commission by certified mail, in the manner required by paragraph 42 of Section IV (Miscellaneous Provisions) of this Consent Order, of any bankruptcy proceeding filed by, on behalf of, or against him, whether inside or outside the United States.

13. Agrees that no provision of this Consent Order shall in any way limit or impair the ability of any other person or entity to seek any legal or equitable remedy against Trimble in any other proceeding.

14. The Court, being fully advised in the premises, finds there is good cause for entry of this Consent Order and that there is no just reason for delay. The Court therefore directs the entry of Findings of Fact, Conclusions of Law and a permanent injunction and ancillary equitable relief pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, as set forth herein.

### III. CONCLUSIONS OF LAW

**THE COURT HEREBY FINDS:**

15. **Plaintiff U.S. Commodity Futures Trading Commission** is an independent federal regulatory agency that is charged by Congress with administering and enforcing the Act, 7 U.S.C. §§ 1 *et seq.*, and the Regulations promulgated thereunder, 17 C.F.R. §§ 1.1 *et seq.* (2012).

16. **Defendant Nicholas Trimble** resides in Denver, Colorado and is the founder, incorporator, director and president of Capstone; the founder, owner, organizer and manager of BKFCM; and the founder, owner and incorporator of Beekeepers Fund, L.P. ("BKF" or "the fund"). Trimble is an authorized signatory on bank accounts in the names of Capstone and BKF and the authorized trader on off-exchange foreign currency transactions ("forex") trading accounts in the name of the fund. Trimble has not been registered with the Commission in any capacity since January 15, 2008.

17. This Court has jurisdiction over this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1(a) (Supp. V 2011), which provides that whenever it shall appear to the

Commission that any person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation, or order promulgated thereunder, the Commission may bring an action in the proper district court of the United States against such person to enjoin such act or practice, or to enforce compliance with the Act, or any rule, regulation or order thereunder.

18. The Commission has jurisdiction over the forex solicitations and transactions at issue in this action pursuant to Section 2(c)(2)(C) of the Act, as amended, 7 U.S.C. § 2(c)(2)(C) (Supp. III. 2009).

19. Venue properly lies with this Court pursuant to Section 6c(e) of the Act, as amended, 7 U.S.C. § 13a-1(e) (Supp. V 2011), because Defendant Trimble resides in this jurisdiction and the acts and practices in violation of the Act occurred within this District.

20. By the conduct described in the Complaint, Defendant Trimble has cheated or defrauded, or attempted to cheat or defraud, and willfully deceived, or attempted to deceive, Capstone's and BKFCM's participants and customers and prospective participants and customers by among other things, making material misrepresentations and/or failing to disclose material facts to them, and misappropriating their funds, and knowingly or recklessly engaging in such acts and practices in violation of Section 4b(a)(2)(A) and (C) of the Act, as amended, 7 U.S.C. § 6b(a)(2)(A), (C).

21. Unless restrained and enjoined by this Court, there is a reasonable likelihood that the Defendant Trimble will continue to engage in the acts and practices alleged in the Complaint and in similar acts and practices in violation of the Act.

## IV. PERMANENT INJUNCTION

**IT IS THEREFORE ORDERED THAT:**

22. Based upon and in connection with the foregoing conduct, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, Defendant Trimble is permanently restrained, enjoined and prohibited from directly or indirectly:

    a. cheating or defrauding or attempting to cheat or defraud any other person, and/or willfully deceiving or attempting to deceive such other persons by any means whatsoever in regard to any order or contract or the disposition or execution of any order or contract, or in regard to any act of agency performed with respect to any order or contract for or with such other persons, in or in connection with any order to make, or the making of, any contract of sale of any commodity for future delivery, or swap, or other agreement, contract, or transaction subject to paragraphs (1) and (2) of section 5a(g), that is made, or to be made, for or on behalf of, or with, any other person, other than on or subject to the rules of a designated contract market, in violation of Section 4b(a)(2)(A) and (C) of the Act, as amended, to be codified at 7 U.S.C. §6b(a)(2)(A), (C).

23. Defendant Trimble is also permanently restrained, enjoined and prohibited from directly or indirectly:

    a. Trading on or subject to the rules of any registered entity, (as that term is defined in Section 1a of the Act), as amended, 7 U.S.C. § 1(a);

b. Entering into any transactions involving commodity futures, options on commodity futures, commodity options (as that term is defined in Regulation 1.3(hh), 17 C.F.R. §1.3(hh) (2011)) ("commodity options"), security futures products, foreign currency (as described in 7 U.S.C. §§ 2(c)(2)(B) and 2(c)(2)(C)(i) ("forex contracts")), or any swap (as that term is defined in section 1a(47) of the Act and as further defined by Regulation 1.3(xxx) ("swap")), for his own personal account or any account in which Trimble has a direct or indirect interest;

c. Having any commodity futures, options on commodity futures, commodity options, security futures products, forex contracts, and/or swaps traded on his behalf, whether jointly and/or individually;

d. Controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity futures, options on commodity futures, commodity options, security futures products, forex contracts, and/or swaps;

e. Soliciting, receiving or accepting any funds from any person for the purpose of purchasing or selling any commodity futures, options on commodity futures, commodity options, security futures products, forex contracts, and/or swaps;

f. Applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission, except

8

as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2011); and/or

g.  Acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a)(2011)), agent or any other officer or employee of any person (as that term is defined in 7 U.S.C. § 1a) registered, exempted from registration or required to be registered with the Commission except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2011).

## V. RESTITUTION AND CIVIL MONETARY PENALTY

### A. Restitution

24. Defendant Trimble shall pay restitution in the amount of $887,399 (Eight Hundred, Eighty-Seven Thousand Three-Hundred and Ninety-Nine Dollars) (the "Restitution Obligation"), plus post-judgment interest. Post-judgment interest shall accrue on the Restitution Obligation beginning on the date of entry of this Consent Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Consent Order pursuant to 28 U.S.C. § 1961.

25. Defendant Trimble shall receive a dollar-for-dollar credit against his Restitution Obligation for the amount of any restitution paid by Defendants Capstone and BKFCM as may be ordered by the Court in this action and a dollar-for-dollar credit for up to $409,510.00 as may be paid by defendant Jeffery L. Groendyke in the matter, *CFTC v. Jeffery L. Gorendyke*, d/b/a JG Forex Fund, Case No.: 11-cv-00448 (W.D. MI., May 3, 2011).

26. To effect payment of the Restitution Obligation and the distribution of any restitution payments to the participants and customers, the Court hereby appoints the National

Futures Association ("NFA") as Monitor. The Monitor shall collect restitution payments from Trimble and make distributions as set forth below. Because the Monitor is acting as an officer of the Court in performing these services, the NFA shall not be liable for any action or inaction arising from the NFA's appointment as Monitor, other than actions involving fraud.

27. Trimble shall make Restitution Obligation payments under this Consent Order to the Monitor in the name of "Trimble Restitution Fund" and shall send such Restitution Obligation payments by electronic funds transfer, or by U.S. postal money order, certified check, bank cashier's check, or bank money order, to the Office of the Administration, National Futures Association, 300 South Riverside Plaza, Suite 1800, Chicago, IL 60606 under a cover letter that identifies the paying Defendant and the name and docket number of this proceeding. Trimble shall simultaneously transmit copies of the cover letter and the form of payment to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, DC 20581.

28. The Monitor shall oversee the Restitution Obligation and shall have the discretion to determine the manner of distribution of such funds in an equitable fashion to the participants and customer identified by the Commission or may defer distribution until such time as the Monitor deems appropriate. In the event that the amount of Restitution Obligation payments to the Monitor are of a *de minimis* nature, such that the Monitor determines that the administrative cost of making a distribution to eligible participant and customer is impractical, the Monitor may, in its discretion, treat such restitution payments as civil monetary penalty payments, which the Monitor shall forward to the Commission following the instructions for civil monetary payments set forth in Part B below.

29. Trimble shall cooperate with the Monitor as appropriate to provide such information as the NFA deems necessary and appropriate to identify participants and customers to whom the Monitor, in its sole discretion, may determine to include in any plan for distribution of any Restitution Obligation payments. Trimble shall execute any documents necessary to release funds that he has in any repository, bank, investment or other financial institution wherever located, in order to make partial or total payment toward the Restitution Obligation.

30. Within thirty (30) days of receiving this Consent Order, any financial institution, including any Futures Commission Merchant ("FCM"), holding funds in the name of Trimble is specifically directed to liquidate and release all funds, whether the funds are held in a single or joint account, or any other capacity, and to convey by wire transfer to an account designated by the Monitor, all funds in these accounts, less any amounts required to cover the financial institutions' outstanding administrative or wire transfer fees. At no time during the liquidation, release, and/or wire transfer of these funds pursuant to this Consent Order shall Trimble be afforded any access to, or be provided with, any funds from these accounts.

31. Trimble and all banks and financial institutions subject to this Consent Order shall cooperate fully and expeditiously with the CFTC and the Monitor in the liquidation, release, and wire transfer of these funds.

32. The Monitor shall provide the CFTC at the beginning of each calendar year with a report detailing the disbursement of funds to Investors during the previous year. The Monitor shall transmit this report under a cover letter that identifies the name and case number of this proceeding to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Center, 1155 21st Street, NW, Washington, DC 20581.

33. The amounts payable to each participant and customer shall not limit the ability of any participant or customer from proving that a greater amount is owed from Trimble or any other person or entity, and nothing herein shall be construed in any way to limit or abridge the rights of any participant or customer that exist under state or common law.

34. Pursuant to Rule 71 of the Federal Rules of Civil Procedure, each participant and customer of Trimble and Capstone and BKFCM who suffered a loss is explicitly made an intended third party beneficiary of this Consent Order and may seek to enforce obedience of this Consent Order against Trimble to obtain satisfaction of any portion of the restitution that has not been paid by Trimble, to ensure continued compliance with any provision of this Consent Order and to hold Trimble in contempt for any violation of any provision of this Consent Order.

35. To the extent that any funds accrue to the U.S. Treasury for satisfaction of Trimble's Restitution Obligation, such funds shall be transferred to the Monitor for disbursement in accordance with the procedures set forth above.

**B.     Civil Monetary Penalty**

36. Trimble shall pay a civil monetary penalty of $400,000 (Four Hundred Thousand Dollars), plus post judgment interest (the "CMP Obligation"). Post-judgment interest shall accrue on the CMP Obligation beginning on the date of entry of this Consent Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Consent Order pursuant to 28 U.S.C. § 1961.

37. Trimble shall pay this CMP Obligation by electronic funds transfer, U.S. postal money order, certified check, bank cashier's check, or bank money order. If payment is to be

made other than by electronic funds transfer, the payment shall be made payable to the Commodity Futures Trading Commission and sent to the address below:

>Commodity Futures Trading Commission
>Division of Enforcement
>ATTN: Accounts Receivable – AMZ 340
>E-mail Box: 9-AMZ-AR-CFTC
>DOT/FAA/MMAC
>6500 S. MacArthur Blvd
>Oklahoma, OK 73169
>Telephone: (405) 954-5644

38. If payment by electronic transfer is chosen, Defendant Trimble shall contact Linda Zurhorst at the address above or her successor for instructions and shall fully comply with those instructions. Trimble shall accompany payment of the CMP Obligation with a cover letter that identifies Trimble and the name and case number of this proceeding. Trimble shall simultaneously transmit copies of the cover letter and the form of payment to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Square, 1155 21st Street, NW, Washington, DC 20581.

C. **Provisions Related to Monetary Sanctions**

39. All payments by Trimble pursuant to this Consent Order shall first be applied to satisfaction of his restitution obligation, consistent with the authority granted the Monitor, above. After satisfaction of his restitution obligation, payments by Trimble pursuant to this Consent Order shall be applied to satisfy his CMP obligation.

40. Partial Satisfaction: Any acceptance by the Commission or the Monitor of partial payment of Trimble's Restitution Obligation or CMP Obligation shall not be deemed a waiver of Trimble's obligation to make further payments pursuant to this Consent Order, or a waiver of the Commission's right to seek to compel payment of any remaining balance.

13

**D.  Cooperation**

41.  Trimble shall cooperate fully and expeditiously with the Commission, including the Commission's Division of Enforcement, and any other governmental agency in this action, and in any investigation, civil litigation, or administrative matter related to the subject matter of this action or any current or future Commission investigation related thereto.

## VI.  MISCELLANEOUS PROVISIONS

42.  Notice: All notices required to be given by any provision in this Consent Order shall be sent certified mail, return receipt requested, or by facsimile as follows:

Notice to the Commission:

> Associate Director
> Commodity Futures Trading Commission
> Division of Enforcement
> 525 West Monroe Street, Suite 1100
> Chicago, IL 60661
> Facsimile: (312) 596-0714

> Notice to Trimble:
> P.O. Box 40643
> Denver, CO 80204
> Telephone: xxx-xxx-6771

All such notices to the Commission shall reference the name and case number of this action.

43.  Change of Address/Telephone: Until such time as Trimble satisfies the Restitution Obligation and CMP Obligation as set forth in this Consent Order, Trimble shall provide written notice of his new telephone number(s) and mailing addresses within ten (10) calendar days of the change.

44.  Entire Agreement and Amendments: This Consent Order incorporates all of the terms and conditions of the settlement among the parties hereto to date. Nothing shall serve to

amend or modify this Consent Order in any respect whatsoever, unless: (a) reduced to writing; (b) signed by all parties hereto; and (c) approved by order of this Court.

45. **Invalidation:** If any provision of this Consent Order or if the application of any provision or circumstance is held invalid, the remainder of this Consent Order and the application of the provisions to any other person or circumstances shall not be affected by the holding.

46. **Waiver:** The failure of any party to this Consent Order or any participant or customer at any time or times to require performance of any provision hereof shall in no manner affect the right of such party or participant or customer at a later time to enforce the same or any other provision of this Consent Order. No waiver in one or more instances of the breach of any provision contained in this Consent Order shall be deemed to be or construed as a further or continuing waiver of such breach or waiver of the breach of any other provision of this Consent Order.

47. **Continuing Jurisdiction of this Court:** This Court shall retain jurisdiction of this cause to assure compliance with this Consent Order and for all other purposes related to this action, including any motion by Trimble to modify or for relief from the terms of this Consent Order.

48. **Injunctive and Equitable Relief Provision:** The injunctive and equitable relief provisions of this Consent Order shall be binding upon Trimble, upon any person under his authority or control, and upon any person who receives actual notice of this Consent Order, by personal service, e-mail, facsimile or otherwise insofar as he or she is in active concert or participation with Trimble.

49. Counterparts and Facsimile Execution: This Consent Order may be executed in two or more counterparts, all of which shall be considered one and the same agreement and shall become effective when one or more counterparts have been signed by each of the parties hereto and delivered (by facsimile, e-mail, or otherwise) to the other party, it being understood that all parties need not sign the same counterpart. Any counterpart or other signature to this Consent Order that is delivered by any means shall be deemed for all purposes as constituting good and valid execution and delivery by such party of this Consent Order. Trimble understands that the terms of the Consent Order are enforceable through contempt proceedings, and that, in any such proceedings he may not challenge the validity of this Consent Order.

50. Trimble understands that the terms of the Consent Order are enforceable through contempt proceedings, and that, in any such proceedings he may not challenge the validity of this Consent Order.

There being no just reason for delay, the Clerk of the Court is hereby directed to enter this Consent Order for Permanent Injunction, Civil Monetary Penalty and Other Equitable Relief against Nicholas Trimble.

**CONSENTED TO AND APPROVED BY:**

_N. Trimble_ 1/17/13
Defendant
Nicholas Trimble, *pro se*
P.O. Box 40643
Denver, CO 80204
trimble.nick@gmail.com

_Brigitte Weyls_ 1/17/13
Plaintiff, U.S. Commodity Futures
Trading Commission
Brigitte Weyls
Attorney for the Plaintiff
525 W. Monroe St., Suite 1100
Chicago, IL 60661
T: (312) 596-0700
F: (312) 596-0714
bweyls@cftc.gov

**IT IS SO ORDERED.**

Dated: March 14, 2013

                                                Philip A. Brimmer
                                                United States District Judge